# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARC WILLIAMS,** : | **CIVIL ACTION** |
| **Plaintiff,** : | |
| v. : | **No. 17-3862** |
| **LIBERTY MUTUAL INSURANCE,** : | |
| **Defendant.** : | |

**Goldberg, J.**                                                                                       **May 23, 2018**

## MEMORANDUM

Plaintiff Marc Williams initiated this action against Defendant Liberty Mutual Insurance Company alleging breach of contract and bad faith in connection with Defendant's alleged failure to provide adequate underinsured motorist coverage pursuant to an insurance policy issued by Defendant to Plaintiff. Defendant moves for partial summary judgment as to Plaintiff's bad faith claim. For the reasons set forth below, I will grant the Motion and enter judgment in favor of Defendant on the bad faith claim.

## I.    FACTUAL BACKGROUND

The following facts are undisputed unless indicated otherwise:

On February 10, 2016, Plaintiff was involved in a motor vehicle accident near the intersection of Kelly Drive and Midvale Avenue, Philadelphia, Pennsylvania. The tortfeasor, Agustin Lano, was operating a motor vehicle at approximately 7:30 p.m., when he rear-ended Plaintiff's vehicle. (Compl. ¶ 4.) Plaintiff settled the underlying claim with Infinity Insurance, Esteban Ortiz Garcia, and Agustin Cano for the policy limits of $15,000. (Def.'s Mot. Summ. J., Ex. C.)

At the time of the accident, Plaintiff was insured under LibertyGuard Auto Policy No. A06-288-903573-00 5 4 (the "Policy") issued by Defendant for the period June 27, 2015 to June 27, 2016. (Compl. ¶ 14, Answer ¶ 14.) On July 13, 2017, Defendant's claim professional, Matthew Timko, received and reviewed a new assignment for an uninsured motorist ("UIM") case relating to this Policy. (Def.'s Mot. Summ. J., Ex. G.) Mr. Timko immediately reached out to Plaintiff's attorney via both phone and e-mail seeking additional information about Plaintiff's UIM claim. (Id.) The following day, Mr. Timko contacted Adrian Tomlin at Infinity Insurance, who advised that Infinity had accepted liability on the underlying claim and offered to settle for $15,000. (Id. Ex. H.) On the same day, Mr. Timko sent a letter to Plaintiff's attorney acknowledging receipt of Plaintiff's demand packet and requesting a telephone statement from Plaintiff. (Id. Ex. I.) In addition, Mr. Timko received a copy of the proposed release from Infinity and granted consent to settle. (Id. Ex. J.)

On July 15, 2017, Mr. Timko received an email from Plaintiff's attorney advising of his $75,000 demand. Mr. Timko responded that, in order to evaluate this demand, he needed medicals and a client statement. (Id. Exs. J, K.) Mr. Timko received the requested information on July 22, 2017, but noted internally that he still needed more information to complete the evaluation, including tort status, cervical film review, and a determination if there is a medical special claim and/or wage loss claim (Id. Ex. L, M.)

On August 1, 2017, Plaintiff's attorney emailed Mr. Timko asking if he reviewed the demand packet. Mr. Timko responded that he had, but was still in need of a statement from Plaintiff, as well as MRI films, in order to determine whether the injury caused a "serious impairment." (Id. Exs. N, O.) Counsel e-mailed back saying, "Sounds to me like a lot of hoops to jump through just so you can say you don't think there's a breach. Best option seems to filing

a lawsuit, which would then allow for depositions, ime, film review, etc." (Id. Ex. O.) Mr. Timko responded that he would await the complaint. (Id. Ex. N.)

On August 1, 2017, Plaintiff filed a Complaint in the Court of Common Pleas for Philadelphia County alleging both breach of contract and bad faith. (Id. Ex. A.) Defendant removed the action to federal court on August 28, 2017, and timely filed an Answer with Affirmative Defenses. (Id., Exs. B, D.) Defendant served Plaintiff with Interrogatories and Requests for Production of Documents on October 2, 2017, but Plaintiff did not respond until January 23, 2017. (Id., Exs. F, P.)

On January 29, 2018, Plaintiff was deposed. (Id., Ex. Q.) When specifically asked about his bad faith claim, Plaintiff admitted that he had no knowledge of the investigation that was done by Defendant in connection with this claim. (Id. Ex. Q, at 63:3–64:9.)

Jaimo Ahn, MD, PhD, FACS, FAOA authored and submitted an expert report on February 28, 2018, following an independent medical examination of Plaintiff on February 22, 2018. (Id. Ex. R.) On March 2, 2018, Andrew Shaer, M.D. authored an expert report based on his review of MRIs of Plaintiff's left shoulder, cervical spine, and MRI lumbar spine from September 17, 2016, October 26, 2016, and October 28, 2016 respectively.

Defendant filed the current Motion for Partial Summary Judgment as to Plaintiff's bad faith claim on April 16, 2018. Plaintiff submitted an untimely response on May 16, 2018.[1]

## II. STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] Under Local Rule of Civil Procedure 7.1(c), "any party opposing [a] motion shall serve a brief in opposition together with such answer or other response that may be appropriate, within fourteen (14) days after service of the motion and supporting brief." E.D. Pa. Civil Rule 7.1(g). Plaintiff's response was not filed until thirty days after the Motion.

56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.  To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c) (1).

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative or to make credibility determinations.  Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).  Rather, the court must consider the evidence, and all reasonable inferences that may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial,"

4

summary judgment is appropriate. Id. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249–50.

Notably, Federal Rule of Civil Procedure 56 does not simply allow the Court to grant a motion for summary judgment as unopposed. Rather, even where the nonmoving party fails to respond, the Court may enter summary judgment in favor of the moving party only if the moving party has established that summary judgment is appropriate. See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).

## III. DISCUSSION

The Pennsylvania legislature has created a statutory remedy for an insurer's bad faith conduct, as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371. "In Pennsylvania, 'bad faith' in insurance cases is defined as 'any frivolous or unfounded refusal to pay proceeds of a policy.'" Mirarchi v. Seneca Specialty Ins. Co., 564 F. App'x 652, 655 (3d Cir. 2014) (quoting Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Bad faith must be demonstrated by clear and

5

convincing evidence, "a burden that applies even on summary judgment." Mirarchi, 564 F. App'x at 655.

To establish bad faith under 42 Pa.C.S. § 8371, a plaintiff must demonstrate that the insurer (1) lacked a reasonable basis for denying benefits and (2) knew or recklessly disregarded its lack of a reasonable basis. Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky, 649 A.2d at 688). In the insurance context, bad faith denotes a "frivolous or unfounded" refusal to pay policy proceeds, which imports a dishonest purpose and a breach of a known duty, such as good faith and fair dealing. Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994) (quotations omitted). While mere negligence or bad judgment are insufficient, a showing of reckless disregard will suffice to establish bad faith. 3039 B Street Assoc. Inc. v. Lexington Ins. Co., 740 F. Supp. 2d 671, 677 (E.D. Pa. 2010), aff'd, 444 F. App'x 610 (3d Cir. 2011).

"'Section 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may extend to the insurer's investigative practices.'" Condio v. Erie Ins. Exch., 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006) (quoting O'Donnell v. Allstate Ins. Co., 734 A.2d, 901, 906 (Pa. Super. Ct. 1999)). A bad faith insurance practice can also include an unreasonable delay in handling or paying claims. Ania v. Allstate Ins. Co., 161 F. Supp. 2d 424, 430 (E.D. Pa. 2001). Thus, even when "an insurance claim has been settled and paid, Pennsylvania's bad faith statute provides insurance claimants a means of redressing unreasonable delays by their insurers." Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co., 399 F.3d 224, 235 (3d Cir. 2005).

To establish a claim of bad faith based on the insurer's delay in paying the claim, the plaintiff must show that (1) the delay was attributable to the insurer; (2) the insurer had no reasonable basis for causing the delay; and (3) the insurer knew or recklessly disregarded the

6

lack of a reasonable basis for the delay. Mirarchi, 564 F. App'x at 655–56. The plaintiff bears the burden of establishing delay by clear and convincing evidence. Williams v. Hartford Cas. Co. Ins. Co., 83 F. Supp. 2d 567, 571 (E.D. Pa. 2000), aff'd, 261 F.3d 495 (3d Cir. 2001). A long period of time between demand and settlement does not, on its own, necessarily constitute bad faith. Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 582, 589 (E.D. Pa. 1999), aff'd, 234 F.3d 1265 (3d Cir. 2000). "[I]f delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." Williams, 83 F. Supp. 2d at 572 (quotation omitted) (holding that a delay of fifteen months to resolve a claim—during which the insurer took the insured's deposition nine months after notification of the claim, waited one year before taking the insured's deposition and waited fourteen months to obtain a vocational assessment—was not an unreasonable length of time so as to rise to the level of bad faith, even though the insurer could have completed its investigation with greater speed); Quaciari v. Allstate Ins. Co., 998 F. Supp. 578, 582–83 (E.D. Pa.), aff'd, 172 F.3d 860 (3d Cir. 1998) (holding that even if all delay were attributable to the insurer, a period of approximately thirteen months between notification of UIM claim and resolution of claim through arbitration would not, without more, be sufficient to establish bad faith).

Despite his burden to come forward with some evidence in the face of a motion for summary judgment, Plaintiff improperly rests his bad faith claim entirely on the allegations of his Complaint, which state:

> 20. In violation of the policies and laws of the Commonwealth of Pennsylvania, the defendant unreasonably, unfairly and in bad faith withheld and/or unreasonably delayed appropriate payment of underinsured motorist benefits. The wrongful conduct consisted of the following:
>
> a. Failing to objectively and fairly evaluate plaintiff's claim;

7

> b. Unreasonably delaying the objective and fair evaluation of plaintiff's claim;
>
> c. Causing unreasonable delays in all aspects of the handling of plaintiff's claim;
>
> d. Dilatory and abusive claims handling;
>
> e. Conducting an unfair, unreasonable and dilatory investigation of plaintiff's claim;
>
> f. Failing to assign adequately experienced and/or qualified claims adjusters to the claim;
>
> g. Compelling the plaintiff to seek legal redress by forcing plaintiff to commence the within civil action to recover underinsured motorist benefits to which []he is entitled;
>
> h. Failing to make underinsured motorist benefit payments on behalf of the plaintiff at a time when Carrier knew that plaintiff was entitled to said payment under the terms of the policy; and
>
> i. Withholding payments to plaintiff knowing plaintiff's claim for underinsured motorist benefits under the policy are valid.
>
> 21. In light of the conduct summarized above, defendant lacked a reasonable basis for denying and/or delaying underinsured motorist benefits to plaintiff and knew of or recklessly disregarded its lack of a reasonable basis.
>
> 22. In light of the conduct summarized above, defendant has violated the policy's implied covenant of good faith and fair dealing and/or has committed the tort of bad faith, including but not limited to violating 42 Pa. C.S.A. § 8371 for which the carrier is liable for interest on the claim from the date the claim was made in an amount equal to the prime rate of interest plus three percent (3%), court costs, attorney fees, punitive damages and such other compensatory damage and/or consequential damages allowed by law.

(Compl. ¶¶ 20–22.)

Aside from these conclusory allegations, Plaintiff provides no clear and convincing evidence to substantiate his bad faith claims. See Anderson, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials in his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Indeed, to the contrary, the undisputed evidence reveals no bad faith investigation or delay on Defendant's part. According to the record before me, Defendant first received notice of Plaintiff's UIM claim in mid-July 2017—approximately eighteen months after the accident. Over the next two weeks, Defendant's claim professional, Matthew Timko, began an investigation of Plaintiff's claims, asked for a demand packet, requested medical documents, and sought a statement from Plaintiff. When Mr. Timko requested a signed medical authorization so he could obtain Plaintiff's MRI films—a mere two weeks after initiating the claim process—Plaintiff's counsel decided that litigation was the more expedient route. Following Plaintiff's initiation of litigation on August 1, 2017, Defendant timely filed an Answer and, within another thirty days, served written discovery requests on Plaintiff, to which Plaintiff did not respond for almost four months. Defendant promptly deposed Plaintiff on January 29, 2018, and obtained expert medical evaluations on February 28, 2018 and March 2, 2018. The current Motion was filed approximately nine months after Defendant received the initial notification of Plaintiff's UIM claim.

Given the absence of any contrary evidence submitted by Plaintiff, I do not find genuine issue of material fact as to Plaintiff's bad faith cause of action. Aside from the fact that only a minimal amount of time passed between the initiation of the UIM claim and the filing of the lawsuit, any delay was attributable to both Defendant's well-founded need to investigate the claim and Plaintiff's own delays in providing the requested information. Based on this

9

undisputed record, no reasonable factfinder could determine that Defendant acted in bad faith in investigating and/or evaluating Plaintiff's UIM claim. Accordingly, I will grant the Motion for Partial Summary Judgment and enter judgment in favor of Defendant on Plaintiff's bad faith cause of action set forth in Count II of the Complaint.

       An appropriate Order follows.